| | |
|---|---|
| **ERYON LUKE** | **CIVIL ACTION** |
| **VERSUS** | |
| **CPLACE FOREST PARK, SNF, LLC** | **NO.: 13-00402-BAJ-SCR** |

<u>**RULING AND ORDER**</u>

Before the Court is Defendant's **MOTION FOR SUMMARY JUDGMENT (Doc. 10)**, seeking an order dismissing Plaintiff's claims in their entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 56, as well as an order holding Plaintiff liable for attorney's fees. Plaintiff opposes this motion. (Doc. 12). Upon being granted leave, Defendant filed a Reply Brief in support of its Motion for Summary Judgment. (Doc. 22). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Additional briefing is not required. Oral argument is not necessary.

**I.   BACKGROUND**

Plaintiff Eryon Luke asserts several discrimination-related claims against Defendant CPlace Forest Park, SNF, LLC d/b/a Nottingham Regional Rehab Center ("Nottingham"), which is owned by Traditions Senior Management. Plaintiff's allegations stem from her fulltime employment at Nottingham as a certified nursing assistant ("CNA") from October 10, 2011 to May 24, 2012. (*See* Doc. 12 at p. 1). As a CNA, Plaintiff's job responsibilities included turning residents in bed, lifting patients from their beds to wheelchairs, pushing residents in wheelchairs, and ensuring that patients did not fall while walking. (Doc. 12 at p. 4).

On December 2, 2011, Plaintiff learned she was six weeks pregnant with twins. (Doc. 1 at ¶ 4). Plaintiff returned to work the next day with a note from her doctor certifying that she was able to work, provided that she did not engage in heavy lifting for two weeks. (*Id.*). On December 3 and 4, Plaintiff's immediate supervisor permitted Plaintiff to do "light duty" work that did not involve heavy lifting. (*Id.* at ¶ 5). On December 5, Plaintiff met with Rachael Carcamo, Human Resources Payroll Manager for Defendant, to discuss Plaintiff's lifting restrictions. (*Id.* at ¶ 6). Plaintiff remained off work until her doctor signed a release removing lifting restrictions on December 12, 2011. (*Id.* at ¶ 7). On January 22, 2012, Plaintiff brought a doctor's note certifying that Plaintiff could not lift more than thirty pounds for the remainder of her pregnancy. (Doc. 12 at p. 5). Plaintiff admitted that she was physically unable to perform her job as a CNA after her doctor issued these heavy-lifting restrictions. (Doc. 12-1 at pp. 98, 99–100). January 22, 2012 was the last day Plaintiff performed any work at Nottingham. (Doc. 12 at p. 5).

On January 23, 2012, Plaintiff was informed that she needed to pick up paperwork for leave. (*Id.* at ¶ 5(C)). Defendant issued FMLA forms specifying that Plaintiff would take leave from January 23, 2012 to May 23, 2012. (Doc. 12 at p. 6; *see also* Doc. 12-3 at p. 1).

On May 23, Carcamo met with Plaintiff and informed Plaintiff that there was no work available for Plaintiff, subject to Plaintiff's lifting restrictions, and that

2

Plaintiff's employment would be terminated on May 24 if Plaintiff could not return to work then. (Doc. 12 at p. 6). Plaintiff's employment at Nottingham ended on May 24, 2012. (*See* Doc. 12 at p. 1). Plaintiff delivered her twins on June 21, 2012. (Doc. 12 at p. 6).

Plaintiff's Complaint asserts that she was subject to discriminatory employment practices based on her pregnancy, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k); the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.* (Doc. 1). Defendant's Motion for Summary Judgment seeks to dismiss these claims with prejudice and also seeks an order assessing fees against Plaintiff for the frivolous filing of claims under La. R.S. 23:303(B). (Doc. 10). Plaintiff opposes Defendant's Motion. (Doc. 12).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory

allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### a. Title VII

Under Title VII, as amended by the PDA, Plaintiff claims that: (1) Defendant unlawfully terminated Plaintiff's employment in May 2012, and (2) Defendant unlawfully prohibited Plaintiff from working regularly after Plaintiff returned from a two-week period of leave in December 2011. (Doc. 1-2 at ¶¶ 6–7).

Title VII prohibits a covered employer from failing or refusing to hire, discharging, or otherwise discriminating against "any individuals . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII, clarifying that "women affected by pregnancy,

childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ."

A claim brought under the PDA is analyzed like any other Title VII discrimination claim. *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Where the plaintiff has not presented direct evidence of discrimination, as in this case, we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): A plaintiff alleging disparate treatment must establish a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably. *See Appel v. Inspire Pharm., Inc.*, 428 F. App'x 279, 281 (5th Cir. 2011). After the plaintiff has made her prima facie case, the employer must provide "some legitimate nondiscriminatory reason" for the adverse action taken. *Id*. If the employer provides a nondiscriminatory reason, the burden shifts to the plaintiff to show a genuine issue of material fact that either (1) the employer's proffered nondiscriminatory reason is a pretext for discrimination, or (2) regardless of the nondiscriminatory reason, the discriminatory reason was a motivating factor in the employer's action. *Id*. at 282 (*Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

Here, Plaintiff's claim fails to establish a prima facie case of discrimination, because she has not shown that she was qualified for the position. The Fifth Circuit

directly addressed the issue of employee qualifications during pregnancy in *Appel v. Inspire Pharmaceuticals, Inc.*, where the plaintiff Appel failed to establish the second element of a prima facie PDA case because she was physically unable to execute many of her responsibilities that were "essential to proper performance" due to medical complications arising from her pregnancy. 428 F. App'x 279, 283 (5th Cir. 2011). Appel, like Plaintiff in the instant case, argued that there were some aspects of her work she could perform even with medical restrictions. *See id.* at 283. But because Appel could not rebut the fact that she was unable to handle many of the physical responsibilities necessary to do her job properly, the Fifth Circuit affirmed a summary judgment ruling granted on the basis that Appel could not satisfy the second element of the prima facie case of discrimination. *See id.* at 283–84.

      The instant case falls squarely within the ambit of Fifth Circuit precedent. Even if Plaintiff could still accomplish certain aspects of her job while under medical limitations, Plaintiff cannot rebut the fact that she was unable to fulfill several essential physical responsibilities of a CNA once her doctor imposed heavy-lifting restrictions. The parties do not dispute that CNA job duties include turning residents in bed, lifting patients from their beds to wheelchairs, pushing residents in wheelchairs, and ensuring that patients do not fall while walking. (Doc. 12-1 at pp. 37–39). Under Title VII, Defendant is not under any duty to adjust CNA job duties to accommodate Plaintiff on account of her pregnancy. *See Urbano v. Cont'l*

*Airlines, Inc.*, 138 F.3d 204, 207 (5th Cir. 1998) (affirming the principle that "the PDA does not impose an affirmative obligation on employers to grant preferential treatment to pregnant women").

Plaintiff directs this Court to her deposition testimony, where she states that she had in the past used a mechanical lift for "one guy" and that "most of the time" she sought the assistance of a male employee to ensure that a patient did not fall. (Doc. 12-1 at pp. 39–40). Yet Plaintiff stated multiple times in her deposition that she did not think she could perform her job as a CNA once her doctor ordered her to not lift in excess of thirty pounds during her pregnancy. (Doc. 12-1 at pp. 98–100). Plaintiff conceded that lifting was a "big part" of her CNA responsibilities. (*Id.* at p. 73). Furthermore, the parties do not dispute that at any given time during Plaintiff's employment at Nottingham, Plaintiff was *solely* responsible for the care of ten to fifteen patients. (*Id.* at pp. 38–39) (emphasis added). Plaintiff has presented no evidence to contradict Defendant's position that heavy lifting was essential to proper performance of CNA duties, even when Plaintiff received help from mechanical lifts and fellow employees.

Plaintiff has raised no genuine dispute as to the fact that she was not qualified to work as a CNA with her medical restrictions and therefore cannot satisfy the second element of her prima facie claim. Plaintiff has no cause of action under Title VII. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** regarding both Plaintiff's claims under Title VII.

**b. FMLA**

Under the FMLA, Plaintiff alleges that: (1) Defendant forced Plaintiff to take FMLA leave, preventing her from working; (2) the imposition of leave exhausted the leave time available to Plaintiff upon her children's birth; and (3) Defendant did not reinstate Plaintiff upon her doctor's certification that she was able to return to work with light duty restrictions. (Doc. 1-2 at ¶¶ 10–11).

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave. 29 U.S.C. § 2615(a). To establish a prima facie case of interference, Plaintiff must establish that (1) Plaintiff is an eligible employee, (2) Defendant is an employer subject to the FMLA, (3) Plaintiff is entitled to leave under the FMLA, (4) Plaintiff gave proper notice of the intent to take leave, and (5) Plaintiff was denied benefits by her employer. *See Spears v. La. Dep't of Pub. Safety & Corr.*, 2 F. Supp. 3d 873, 877–78 (M.D. La. 2014). As to the first prong of this inquiry, an employee is deemed eligible for FMLA benefits from an FMLA-covered employer when she (1) has been employed for at least twelve months, *and* (2) has worked for at least 1,250 hours during the previous twelve-month period. 29 U.S.C. § 2611(2).

Defendant calculated Plaintiff's leave of absence as lasting from January 23, 2012 to May 23, 2012. (Doc. 12 at p. 6). For this period of leave, Rachael Carcamo, Human Resources Payroll Manager for Defendant, completed paperwork using FMLA forms. (Doc. 10-4 at ¶ 19). Defendant acknowledges that it provided this

FMLA documentation by mistake. (Doc. 10-5 at p. 9). Plaintiff did not meet the statutory requirement for FMLA leave eligibility at any point while she worked at Nottingham from October 2011 to May 2012. The Court will not conjecture as to how many hours Plaintiff would have worked had she not been forced to take four-month leave in February 2012. *See Buchanan-Rushing v. City of Royse City, Texas*, 794 F. Supp. 2d 687, 696 (N.D. Tex. 2011) (finding that "such a calculation is highly speculative, and lacks support from either the statutory language or the relevant case law"). Regardless, Plaintiff would not have been eligible at the time of her termination because twelve months had not elapsed since her start date at Nottingham. Plaintiff was never entitled to FMLA leave during her employment at Nottingham, so she has no viable claim that her FMLA leave was unlawfully exhausted.

Although Defendant concedes that it erroneously conveyed to Plaintiff that she was being placed on FMLA leave, (Doc. 10-5 at p. 9), the evidence in the record does not support Plaintiff's invocation of the doctrine of equitable estoppel. In the context of FMLA leave, the Fifth Circuit has explained the principle of equitable estoppel:

> [A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

9

*Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006). The employee claiming estoppel must have relied on the employer's representations "in such a manner as to change his position for the worse." *Id.* at 359 (*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984)). Plaintiff has not asserted that she in any way changed her position *because of* Defendant's representations that she was entitled to leave under the FMLA. As discussed above, Plaintiff admitted that she was physically unable to perform her job as a CNA after her doctor issued heavy-lifting restrictions for the remainder of Plaintiff's pregnancy. (Doc. 12-1 at pp. 98, 99–100). Plaintiff had no choice but to take leave beginning January 2012, as she was unable to work as a CNA given her medical condition at that time. Plaintiff cannot, therefore, claim benefits under the FMLA under a theory of equitable estoppel.

Accordingly, because Plaintiff has no standing to sue under the FMLA, Defendant's Motion for Summary Judgment is **GRANTED** with respect to all Plaintiff's claims under the FMLA.

### c. LEDL

Finally, under the LEDL, Plaintiff alleges that: (1) Defendant unlawfully denied her the full amount of pregnancy leave to which she was entitled under the state statute, and (2) Defendant refused to transfer Plaintiff to a less strenuous or hazardous position during her pregnancy.

*1. Denial of Full LEDL Leave*

The LEDL prohibits a covered employer from refusing to allow a female employee to "[t]o take a leave on account of pregnancy for a reasonable period of time, provided such period shall not exceed four months." La. R.S. 23:342(2)(b). The last day Plaintiff performed any work at Nottingham was January 22, 2012. (Doc. 12 at p. 5). Defendant calculated Plaintiff's leave to run from January 23, 2012 to May 23, 2012. (Doc. 12 at p. 6; *see also* Doc. 12-3 at p. 1).

In her complaint, Plaintiff alleges that Defendant violated the LEDL by denying her four months of additional leave beginning May 24, 2012. As discussed above, Plaintiff was ineligible for FMLA leave. Plaintiff's four months of leave were drawn from her entitlement under the LEDL.[1] As a matter of law, Plaintiff was not entitled to another four months of leave beginning May 24, 2012.

Plaintiff also disputes when her leave began. Plaintiff asserts that she did not receive written notice of her leave until "after February 10, 2012" and that her LEDL leave should be calculated from that point forward, three weeks later. Plaintiff cites no law to support her assertion that her leave should have been calculated from the date she received written notice. Furthermore, the evidence in the record demonstrates Plaintiff's own understanding that her leave began soon after her last day performing work at Nottingham. Plaintiff was informed on

---

[1] Even in a hypothetical situation in which Plaintiff had qualified for FMLA leave in addition to LEDL leave, her periods of leave allotted under the two statutes would have run concurrently. "If leave qualifies for FMLA leave and leave under State law, the leave used counts against the employee's entitlement under both laws." 29 C.F.R. §825.701.

11

January 23, 2012 by Defendant that she would be put on FMLA leave. Plaintiff stated in her deposition, "January 24th is when I left off for FMLA." (Doc. 12-1 at p. 54). FMLA regulations explicitly contemplate that notice of the need to take leave may arise after the actual start of FMLA leave. *See* 29 C.F.R. §825.219 (". . . at the time the employee gives notice of the need for FMLA leave (*or when FMLA leave commences, if earlier*)" (emphasis added). The federal leave regulations are persuasive though not binding here since, as discussed, Defendant mistakenly characterized Plaintiff's leave as FMLA leave instead of as LEDL leave. But in the absence of Plaintiff citing any law that would counsel against starting the clock on leave the day after Plaintiff's last day at work, Plaintiff has no legitimate claim under the LEDL based on Defendant's calculation of leave dates.

## 2. Reasonable Accommodation

Plaintiff asserts that Defendant also violated the LEDL by refusing to transfer her to a light-duty position. The LEDL provides that an employer, if requested, must transfer a pregnant employee to "a less strenuous or hazardous position for the duration of her pregnancy . . . where such transfer can be reasonably accommodated." La. R.S. 23:342(4). In helping to define the contours of reasonable accommodation, the statute specifies that "no employer shall be required . . . to create additional employment which the employer would not otherwise have created, nor shall such employer be required to discharge any employee, transfer

12

any employee with more seniority, or promote any employee who is not qualified to perform the job." La. R.S. 23:342(4).

Although Plaintiff's medical restrictions rendered her unqualified for the CNA position, there remains a genuine dispute of fact as to whether Defendant could have reasonably accommodated Plaintiff in another position, with light duty work that did not involve lifting over thirty pounds. Plaintiff asserts that after she notified Defendant of her pregnancy and her doctor's orders in December, she was allowed to take light duty work, helping out other employees. (Doc. 12-1 at p. 48). Plaintiff further asserts that "Nottingham did have positions that did not require lifting over thirty pounds." (Doc. 12 at p. 6). However, in response, Defendant avers that no vacant positions or positions held by someone with less seniority were available to Plaintiff, (Doc. 10-5 at pp. 14–15), and notes that Plaintiff failed to inquire through discovery whether such positions were available during the relevant time period, (Doc. 22 at p. 4 n.4). Defendant further states that Plaintiff's weekend supervisor allowed Plaintiff to perform work that did not involve heavy lifting the weekend after Plaintiff discovered she was pregnant. (Doc. 10-4 at ¶ 5). Carcamo, on behalf of Defendant, acknowledged that Plaintiff had been given light duty on weekends for a short period of time. (Doc. 12-2 at pp. 15–16). There remains a genuine dispute of material fact as to whether reasonable accommodations could have been made for Plaintiff under the LEDL. Thus, Defendant has not met its burden and summary judgment on this claim is denied.

### 3. Jurisdiction Over LEDL Claim

In accordance with the rulings above, the LEDL claim under La. R.S. 23:342(4) is the lone remaining claim in this matter. In the absence of a surviving federal claim, and in the interest of fairness to all parties involved and judicial economy, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claim and remands this matter to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana. *See Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011); *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002) (noting that where "no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted) (the "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial.").

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** with respect Plaintiff's claim under La. R.S. 23:342(2)(b) and **DENIED** with respect to Plaintiff's claim under La. R.S. 23:342(4). Plaintiff's claim under La. R.S. 23:342(4) is **REMANDED** to the state court from which it was removed.

### d. Attorney's Fees

Defendant seeks an order assessing damages against Plaintiff under the LEDL, which provides: "a plaintiff found by a court to have brought a frivolous claim under this Chapter shall be held liable to the defendant for reasonable

damages incurred as a result of the claim, reasonable attorney fees, and court costs." La. R.S. 23:303(B). These penalties may only be assessed with respect to the claims filed by Plaintiff under the LEDL. To analyze the appropriateness of an award of attorney's fees to the Defendant under La. R.S. 23:303(B), the Court applies the standard used for an analogous provision in Title VII, which was articulated by the U.S. Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). *See Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, CIV.A. 10-584, 2013 WL 5372346, at *1 (M.D. La. Sept. 24, 2013). In *Christianburg*, the U.S. Supreme Court held that a district court may exercise its discretion to assess against a plaintiff her opponent's attorney's fees if a plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so," even if the court did not find the claim made in subjective bad faith. 434 U.S. at 422.

Plaintiff filed two claims under the LEDL, one based on a denial of full LEDL leave under La. R.S. 23:342(2)(b) and the other based on a denial of reasonable accommodation under La. R.S 23:342(4). As the Court found above, the latter claim is meritorious enough to withstand summary judgment, and the Court does not find it to be groundless as to warrant an award of attorney's fees.

As to the former claim, which has been dismissed upon summary judgment, it is important that the Court "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail,

15

[her] action must have been unreasonable or without foundation." *Christianburg*, 434 U.S. at 421–22. Although the Court does not ultimately find a genuine dispute of material fact regarding the merits of Plaintiff's claim that she was denied the full amount of leave she was due under LEDL, neither does the Court find her arguments unreasonable in light of the record evidence demonstrating that Defendant misrepresented, albeit inadvertently, to Plaintiff that she was entitled to FMLA leave. Defendant is a sophisticated party who asserts that it has granted pregnancy leave to numerous employees in the past. (Doc. 10-4 at p. 7). By communicating blatantly incorrect information to Plaintiff about the nature of her leave, Defendant itself was the source of many of these disputed legal claims before the Court today. Thus the Court exercises its discretion and declines to award attorney's fees under the LEDL. Accordingly, Defendant's motion to assess attorney's fees against the Plaintiff is **DENIED**.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Doc. 10)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

**IT IS FURTHER ORDERED** that Plaintiff's claims under Title VII, the FMLA, and La. R.S. 23:342(2)(b) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's La. R.S. 23:342(4) claim is **DISMISSED WITHOUT PREJUDICE** and that this matter is **REMANDED** for consideration by the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

**IT IS FURTHER ORDERED** that Defendant's motion that this Court assess damages and fees against Plaintiff pursuant to La. R.S. 23:303(B) is **DENIED**.

Baton Rouge, Louisiana, this 4th day of November, 2014.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**