UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERYON LUKE** | **CIVIL ACTION NO. 3:13-CV-402** |
| **VERSUS** | **JUDGE BRIAN A. JACKSON** |
| **CPLACE FOREST PARK, SNF, LLC** | **MAGISTRATE JUDGE STEPHEN C. RIEDLINGER** |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Defendant CPlace Forest Park SNF, LLC, d/b/a Nottingham Regional Rehab Center ("Nottingham" or "Defendant"), and submits this Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment. For the reasons set forth below, the Court should deny Plaintiff's motion because, for the reasons set forth in Defendant's Renewed Motion for Summary Judgment (Doc. 42), the undisputed facts compel judgment in Nottingham's favor. In the alternative, despite relying on improperly characterized and inadmissible evidence, the Court should deny judgment in favor of Luke due to the disputed issues of material "fact" regarding whether Nottingham could have accommodated Luke's medical restrictions.

### FACTUAL BACKGROUND

Nottingham adopts and incorporates its Opposition to Plaintiff's Statement of Material Facts which has been filed separately in accordance with Uniform Local Rule 56(b).

### LEGAL ARGUMENT

**I. LUKE'S PREGNANCY DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW.**

The Pregnancy Discrimination Act ("PDA"), which amended Title VII, prohibits employers from discriminating against a female employee "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical

1

conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).  In *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), the Supreme Court altered the required elements for a *prima facie* case pursuant to the PDA relative to a claim that an employer discriminated by failing to accommodate a pregnancy-related disability.  A plaintiff alleging "that the denial of an accommodation constituted disparate treatment" under the second clause of the PDA may make out a *prima facie* case by showing that (1) she belongs to the protected class, (2) she sought accommodation, (3) the employer did not accommodate her, and (4) the employer did accommodate others "similar in their ability or inability to work."  *Id.* at 1354.  If Luke establishes a *prima facie* case, then Nottingham must articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  If Nottingham carries its burden, Luke must provide sufficient evidence that Nottingham's policies "impose a significant burden on pregnant workers, and that the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather – when considered along with the burden imposed – give rise to an inference of intentional discrimination."  *Id*.  In describing the burden shifting under this framework, the Supreme Court held:

> The plaintiff can create a genuine issue of material fact as to whether a significant burden exists by providing evidence that the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage of pregnant workers. Here for example, if the facts are as Young says they are, she can show that UPS accommodates most nonpregnant employees with lifting limitations while categorically failing to accommodate pregnant employees with lifting limitations.

*Young*, 135 S. Ct. at 1354.  The new burden shifting analysis set forth by the Court in *Young* does not change the outcome of this case.  Luke's claim fails.

As an initial matter, Luke appears to suggest that she can prove her claim of pregnancy discrimination by direct evidence.[1]  More particularly, Luke seems to suggest that Carcamo's decision to place her on leave after Luke reported her pregnancy is tantamount to direct evidence of

---
[1] Plaintiff's Memorandum in Support, pp. 4-6.

2

discrimination.  Luke cites to *Carney v. Martin Luther Home, Inc.*, 824. F.2d 643 (8th Cir. 1987) and *Deneen v. Northwest Airlines, Inc.*, 132. F.3d 431 (8th Cir. 1998) to support her argument.  However, the *Carney* and *Deneen* cases are wholly inapposite.  In *Carney*, the plaintiff was forced to take a leave of absence despite being able to perform the essential functions of her job ***without restriction***.[2]  In *Deneen*, the plaintiff was prevented from returning to work from a lay-off status simply because the supervisor had become aware that she was pregnant and the supervisor made an <u>assumption</u> that she could not work in her condition.  Unlike the plaintiffs in *Carney* and *Deneen,* Luke was placed on leave only <u>***after***</u> her physician issued ***restrictions that Luke admitted prevented her from performing her job duties.***  There were no illegal assumptions made by anyone at Nottingham regarding Luke's ability or inability to work.  On the contrary, Nottingham made every effort to follow the specific directives provided directly by Luke from her own physician.  Indeed, when Luke's physician lifted her restrictions, she was promptly returned to work.[3]  Thus, the *Carney* and *Deneen* cases are distinguishable and Luke has no direct evidence of discriminatory motive in this case.

Having failed to come forward with direct evidence of discrimination, Luke must establish a *prima facie* case of discrimination.  In order to establish a *prima facie* case, Luke must demonstrate that Nottingham denied her request for an accommodation but that it accommodated others "similar in their ability or inability to work." *Young*, at 1354.  Luke has no such evidence.

---

[2] In *Carney*, the plaintiff was issued restrictions, at four-months pregnant, from pushing or lifting without assistance" but the physician indicated these restrictions were no more stringent than he would have given to any pregnant employee.  824 F.2d at 644.

[3] Nottingham admits that Luke remained off work until her doctor signed a release on December 12, 2011 allowing Luke to work without restrictions.  After Luke provided the release to Nottingham, Luke was scheduled and worked December 14 through 17, December 20 through 23, December 28 through 30, 2011, January 2, January 7 through January 9, and January 13 through 15, 2012.   During this same time period, Luke was scheduled to work additional days, but either "called-in" sick (December 26, 2011, January 10, and January 16, 2012), did not call-in or report to work as scheduled (December 27, 2011) or reported to work and left within minutes after her arrival (January 3, 2012). (Rachael Carcamo Dec. ¶¶8-13, Exhs. 2-8.  The Declaration of Rachael Carcamo is attached hereto as Exhibit 2 and will be cited herein as "Carcamo Dec., ¶____.")

In support of her motion, Luke repeatedly asserts that Nottingham "did accommodate others" yet Luke offers ***no record evidence*** of examples of specific employees that were accommodated or even statistics showing how many of various "categories" of individuals were accommodated. Rather, the only evidence Luke cites is testimony, which Nottingham does not dispute, that Nottingham and/or other facilities managed by Traditions Senior Management, *should* accommodate certain individuals, including: qualified individuals with disabilities, individuals under restrictions due to workers compensation, and pregnant workers.[4] Luke also cites to the Americans with Disabilities Act Policy contained in Nottingham's Employee Handbook which states, "The Company shall strive to make reasonable accommodations for employees with proper notice preferably in writing."[5] While this policy shows that Nottingham acknowledges its obligations to reasonably accommodate under the ADA it does not prove that Nottingham "accommodated others similar in their ability or inability to work" as compared to Luke in particular. *Young* 135 S.Ct. at 1354. Thus, Luke has failed to make her *prima facie* case.

In order to survive summary judgment, the Court in *Young* held that a plaintiff must show that the employer accommodates most nonpregnant employees with lifting limitations while categorically failing to accommodate pregnant employees with lifting limitations. *Young*, 135 S. Ct. at 1354. The only purported evidence cited by Luke in support of this element is the deposition testimony of Yolanda Selders (Exhibit G to Luke's Motion), who Luke describes as working for "Nottingham's sister facility, Amber Terrace."[6] Luke omits from her motion the full name of the facility, which is Amber Terrace Assisted Living.[7] Unlike Nottingham, which is a nursing home, Amber Terrace is an assisted living facility that has various levels of residents, including many who

---

[4] Plaintiff's Memorandum in Support, p. 10.
[5] Plaintiff's Memorandum in Support, p. 8.
[6] Plaintiff's Memorandum in Support, p.10.
[7] Deposition of Yolanda Selders, p. 5. Excerpts from the Deposition of Yolanda Selders are attached hereto as Exhibit 7 and will be cited herein as "Selders, p. ___."

are fully functional and therefore require less care.[8]  Moreover, Selders testified that Amber Terrace "probably" had one employee who was under light duty for three or four months.  Thus, in contrast to the stringent showing required by *Young*, Luke has come forward with testimony from an entity that was not her employer, with completely different types of residents requiring different levels of care, who "probably" accommodated one employee.  Given the undisputed facts, Luke has not met her *prima facie* burden.

Even assuming this Court were inclined to find a *prima facie* case of discrimination, Luke's claim fails because Nottingham has offered a legitimate, non-discriminatory reason for its actions: it did not have any available light duty positions at the time of Luke's employment.[9]  While Luke contends in her motion that "it is undisputed that Nottingham did in fact have light duty accommodations available and that they offered light duty to other employees …", Luke conveniently omits any citation to record evidence to support this assertion.  Indeed, there is none.  As Nottingham's witnesses have made abundantly clear:  there were no light duty positions available during Luke's employment.[10]  Luke has no evidence to the contrary.

Recognizing that she cannot meet the *prima facie* elements in *Young*, Luke seeks to prove her claim by misdirecting the Court's attention to a number of red herrings.  Specifically, she focuses on the following: (1) testimony by a shift supervisor, Michael Boligny, that there was sufficient work for Luke during the two weekend days that Nottingham honored her restrictions while awaiting direction from HR; (2) testimony from Donna Duplantis that Nottingham should accommodate Luke if it could; (3) purported testimony that there was "no procedure" for granting accommodations; and (4) testimony regarding the possible use of a motorized lift.  Luke's arguments are unavailing.

---

[8] Selders, pp. 30-32.
[9] Carcamo Dec., ¶5.
[10] Id.

5

Michael Boligny was a CNA supervisor who worked at Nottingham during the time of the events in the complaint.[11] Donna Duplantis was the Regional Director of Human Resources for Traditions Senior Management, a management company that had a contract to manage Nottingham during the events in the complaint.[12] Boligny testified that he had no involvement in any decisions regarding Luke's restrictions, leave or separation from employment.[13] Duplantis testified that she spoke with Nottingham personnel, including the HR manager and Director of Nursing who evaluated Luke's restrictions and determined Luke could not perform the main duties of her job, i.e. lifting.[14] Duplantis confirmed that there was no light duty work available.[15] Duplantis further confirmed that Nottingham evaluated other possible positions within the facility but determined that certain other positions would not work within her restrictions and those limited positions that would accommodate her restrictions were not available.[16]

Luke focuses primarily on Boligny's testimony regarding the fact that there was sufficient work for Luke when she returned from the hospital *on December 3 and 4* with lifting restrictions.[17] As an initial matter, Boligny's testimony is irrelevant to the analysis set forth by the Court in *Young*. Even if probative, Boligny's testimony concerned the amount of work available for Luke over the weekend after Luke returned with restrictions.[18] Boligny was not asked and did not indicate whether such work would keep Luke busy on a full time basis for the duration of her pregnany. Moreover, Boligny testified that he had no involvement in any decisions regarding Luke's restrictions, leave or

---

[11] Deposition of Michael Boligny, p. 9. Excerpts from the Deposition of Michael Boligny are attached hereto as Exhibit 6 and will be cited herein as "Boligny, p. ___."
[12] Deposition of Donna Duplantis, pp. 16-17. Excerpts from the Deposition of Donna Duplantis are attached hereto as Exhibit 3 and will be cited herein as "Duplantis, p. ___."
[13] Boligny, pp.25, 27-28, 31.
[14] Duplantis, p. 27,
[15] Duplantis, p. 35
[16] Duplantis, pp.39-40.
[17] Memorandum in Support, p. 11.
[18] Boligny Depo., pp. 23-26.

6

separation from employment.[19] Those individuals responsible for evaluating the issue of accommodations and leave, however, were clear: Nottingham did not have any open positions that required lifting only thirty pounds or less.[20]

With regard to Duplantis and her testimony that "there was no question in my mind that I should make a reasonable accommodation if one was available," Nottingham fully agrees with this testimony and respectfully submits that it in no way creates a factual issue because it does not change the fact that no accommodation existed. Duplantis, Carcamo and the Director of Nursing evaluated Luke's restrictions and determined Luke could not perform the main duties of her job, i.e. lifting.[21] There was no light duty work available.[22] Nottingham evaluated other possible positions within the facility but determined that certain other positions would not work within her restrictions and those limited positions that would accommodate her restrictions were not available.[23] Finally, Luke herself admitted that she was not aware of anyone who worked light duty.[24]

With respect to the purported testimony regarding Nottingham's lack of a procedure for requesting/granting accommodations, Nottingham respectfully submits that Luke has mischaracterized the testimony. Both Roy Bridges, the Chief Operating Officer for Traditions, and Duplantis were clear about the process: a request for accommodation would be evaluated by the employee's supervisor, the Director of HR, and the facility administrator. Duplantis did testify that there was no written policy specifically providing that Nottingham does not offer light duty – which, of course, is consistent with testimony from Carcamo and Duplantis that while they generally did not offer light duty, they did in fact evaluate Luke's particular situation based upon her restrictions, in consultation with the Director of Nursing and in light of the fact that there were

---

[19] Boligny Depo., pp.25, 27-28, 31.
[20] Luke, pp. 102-105; Carcamo Dec., ¶ 21, Exhibits 15-16.
[21] Duplantis, p. 27,
[22] Duplantis, p. 35
[23] Duplantis, pp.39-40.
[24] Luke, p.85.

7

no positions available that would meet her restrictions. This is precisely the process that should be followed, and was followed in this case.

Finally, Luke seems to suggest that she was denied assistance, via the use of a motorized lift and/or direct physical assistance from her co-workers, which would have enabled her to perform her job duties.[25] As an initial matter, with regard to the motorized lift, Boligny testified that those lifts were not at Nottingham when Luke was employed.[26] As for obtaining direct physical assistance from co-workers, Nottingham does not dispute that its policies require employees to obtain assistance with heavy lifting. The issue is whether a thirty pound lifting restriction would permit Luke to perform the type of lifting she normally does, with or without assistance. On that issue, Luke herself admitted she could not. Specifically, as a CNA, Luke's job duties included providing food trays to residents and assisting residents that needed help eating; ensuring residents, their clothing and bed linens were clean, and, in the event a resident was unclean (such as due to having a bowel movement or urinating in bed), cleaning the resident, and changing the resident's clothing and bed linens; turning residents in beds; helping residents move from the bed into a wheelchair (including lifting the resident); pushing residents in wheelchairs; ensuring residents utilizing walkers did not fall by standing behind the resident to be able to catch the resident in the event of a fall; responding to "call lights" of the residents by promptly responding to any call light and physically checking on the resident; and the general grooming and personal care of residents. Luke testified she was responsible for approximately ten to fifteen residents at any given time.[27] Luke

---

[25] Plaintiff's Memorandum in Support, pp. 14-15.
[26] Boligny, p.14.
[27] Luke, pp. 26-27, 37-40; Carcamo Dec., ¶ 4. While Luke contends that no job description was produced that contains a strength or lifting requirement, this requirement is inherent in the job duties of a CNA. Further, Luke was provided with a job description as part of her FMLA documentation. See Luke, Exh. 22. Notably, this job description identifies the following job duties: "answer call lights promptly," "assure residents are given adequate assistance with personal and oral hygiene …," "assist residents with activities of daily living …" and "assure residents are given adequate assistance with meals, nourishment and transportation to meal service areas …"

repeatedly admitted that after she received a lifting restriction of 30 pounds or less, she was not able to perform the job responsibilities of a CNA.[28]

Given these facts, Nottingham respectfully submits that Luke's motion must be denied, while Nottingham's motion should be granted because despite the many red herrings raised in her motion, Luke has utterly failed to set forth any evidence that Nottingham accommodated large numbers (or any) non-pregnant workers while denying the same accommodations to pregnant workers as required by *Young*.

## II. NOTTINGHAM DID NOT VIOLATE LUKE'S RIGHTS UNDER THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW.

Luke originally alleged that Nottingham violated her rights under the LEDL by (1) "not allowing Plaintiff to take the maximum of four months of maternity leave she was entitled to under La. R.S. 23:342(1)(b)"; (2) failing to provide Luke with "requested additional leave"; and (3) "refusing to temporarily transfer Plaintiff to a less strenuous or hazardous position for the duration of her pregnancy" in violation of La. R.S. 23:342(4).[29]  Only the last claim remains at issue following prior proceedings.

La. R.S. 23:342(4) provides that in certain circumstances an employer must transfer a pregnant employee to a less strenuous or hazardous position, and makes it unlawful:

> (4) For any employer to refuse to temporarily transfer a pregnant female employee to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where such transfer can be reasonably accommodated, provided, however, that no employer shall be required by this Part *to create additional employment which the employer would not otherwise have created, nor shall such employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job*.

---

[28] Luke, pp. 98, 104-05, 116-17.
[29] Petition for Damages ¶¶ 12, 13.

In its Motion for Summary Judgment, Nottingham addresses the only job which Luke identified for possible transfer. Luke does not address that potential job in her Motion, so Nottingham will not repeat those arguments here. Essentially, Luke simply reiterates the same arguments set forth in the PDA analysis in support of her LEDL claim. Nottingham respectfully submits that the LEDL requires something different than the PDA. The PDA requires reasonable accommodations beyond mere transfer if such accommodations are made for non-pregnant employees. Nottingham has thoroughly addressed that issue above. The LEDL, on the other hand, only addresses **transfers**. On that point, Luke has adduced no evidence whatsoever. In contrast, Nottingham has demonstrated that the only position Luke identified was not available (Doc. 42-9, p.11) and that Nottingham evaluated other possible positions within the facility but determined that there were no available positions that would work within her restrictions.[30] Because the LEDL does not require Nottingham to create a position or terminate others in order to accommodate restrictions, there was no violation of La. R.S. § 23:342(4). Accordingly, Nottingham is entitled to judgment in its favor on this remaining LEDL claim.

## CONCLUSION

Luke's PDA claims fail as a matter of law because Luke is unable to make a *prima facie* case of discrimination and because she cannot prove Nottingham's legitimate, non-discriminatory reasons for its actions were pretextual. Likewise, Luke fails to present sufficient evidence that Nottingham violated her rights under the LEDL as Nottingham was not obligated to provide her with light duty work under La. R.S. 23:342. Therefore, based on the foregoing undisputed evidence and controlling legal authority, Nottingham respectfully requests that the Court deny Luke's motion and enter summary judgment in favor of Nottingham.

---

[30] Duplantis, pp. 39-40.

Respectfully submitted this 30th day of November, 2015.

>*//s// Christine S. Keenan*
>Christine S. Keenan (LA Bar No. 23293)
>THE KULLMAN FIRM PLC
>4605 Bluebonnet Blvd. Ste. A
>Baton Rouge, LA 70809
>Tel. (225) 906-4250
>Fax (225) 906-4230
>csk@kullmanlaw.com
>
>**ATTORNEY FOR DEFENDANT**
>**CPLACE FOREST PARK, SNF,**
>**LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2015, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system to:

Victor J. Woods, Jr.  Elizabeth
L. LeBlanc
3834 New Prosperity Lane, Suite A Addis,
LA  70710

>*//s// Christine S. Keenan*
>Christine S. Keenan

11