**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ERYON LUKE** | * **CIVIL ACTION NO. 3:13-CV-402** |
| | * |
| **VERSUS** | * **JUDGE BRIAN A. JACKSON** |
| | * |
| **CPLACE FOREST PARK** | * **MAGISTRATE JUDGE STEPHEN C.** |
| **SNF, LLC** | * **RIEDLINGER** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel comes and appears ERYON LUKE,

plaintiff, in the above-captioned matter, who submits this memorandum in opposition to

Defendant's Renewed Motion for Summary Judgment as follows:

**FACTUAL BACKGROUND**

This Memorandum of Law is filed in Opposition to Defendant CPlace Forest Park SNF,

LLC's Renewed Motion of Summary Judgment ("CPlace MSJ" Doc. 42), and the defendant's

purported Statement of Undisputed Facts ("SOF" Doc. 42-8).  In addition, Plaintiffs' own motion

for summary judgment was filed on November 9, 2015. ("Luke MSJ" See Docs. 44, 45).1

Plaintiff otherwise incorporates by reference herein her memorandum in support of her motion

for summary judgment and accompanying statement of facts.

The Defendant erroneously states the only remaining claims in this matter are that

Nottingham violated the PDA and/or La. R.S.23:342(4) by not accommodating Luke's lifting

restriction, and that Nottingham violated the PDA by separating her from employment ("CPlace

MSJ", Doc. 42-9, Page 2).  With respect to the claims on which the defendant does not move for

---

1 To avoid burdening the Court with duplicative filings, the term "P-SOF" used herein refers to the statement of
facts filed in support of Plaintiff's motion for summary judgment. (See Doc. 44-1) The term "Counterstatement"
used herein refers to Plaintiff's separate counterstatement response to Defendant's statement of facts, filed
contemporaneously with this response.

summary judgment, as set forth below, the defendant's arguments are completely nullified under the applicable law or are raising topics as to which genuine issues of material fact exist.

## SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## LAW AND ARGUMENT

**APPLICABLE LAW:**

Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), prohibits employment discrimination on the basis of pregnancy. 42 U.S.C. 2000e(k).  The PDA provides that "sex" includes pregnancy (the "first clause") and that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment  related purposes… as other persons not so affected but similar in their ability or inability to work," (the "second clause").   In *Young v. United Parcel Service, Inc*.  575 U.S.____, 135 S. Ct. 1338 (2015), the Supreme Court clarified the plaintiff's prima facie showing in a pregnancy accommodation claim:

> a plaintiff alleging that the denial of an accommodation constituted disparate
> treatment under the Pregnancy Discrimination Act's second clause may make out a

prima facie case by showing, as in McDonnell Douglas, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others "similar in their ability or inability to work." (Id. at 298).

Upon showing a prima facie case; the burden shifts to the employer to justify its refusal to accommodate the plaintiff by relying on legitimate, nondiscriminatory reasons for denying her accommodation. Regarding the reason for refusal to accommodate *Young*, supra. states:

> The employer may then seek to justify its refusal to accommodate the plaintiff by relying on "legitimate, nondiscriminatory" reasons for denying her accommodation. 411 U. S., at 802. But, consistent with the Act's basic objective, that reason normally cannot consist simply of a claim that it is more expensive or less convenient to add pregnant women to the category of those ("similar in their ability or inability to work") whom the employer accommodates. After all, the employer in Gilbert could in all likelihood have made just such a claim.

If the employer offers an apparently legitimate, nondiscriminatory reason for its actions, the plaintiff may show the employer's reasons are in fact pretextual.

## II.  Nottingham Accommodated Others Similar in Their Ability or Inability to Work.

The defendant argues that  "Luke cannot establish that Nottingham accommodated others similar in their ability or inability to work," (CPlace MSJ page 5). The defendant's argument ignores that the plaintiff's failure to accommodate claim is broader than just not providing light duty but also encompasses not being provided assistance with lifting once she became pregnant despite being provided said assistance prior to becoming pregnant and that other non-pregnant employees were provided said assistance[2]   Regardless, the evidence shows that the defendant accommodated other employees.  In addition, the defendant had light duty positions at its sister facility to which it could have transferred Ms. Luke. This is discussed in section C below.

The defendant's claim that Luke herself acknowledged that Nottingham did not accommodate others by providing light duty (CPlace MSJ page 5) is also incorrect.   Defendant

---

[2] Luke p. 39; Boligny p. 12, 1-2; p, 13, 4-9; p. 16, 9-14

has taken Ms. Luke's statement out of context; a fuller reading of what Ms. Luke said at her deposition shows that the excerpt referenced only asks the plaintiff if she were aware of anybody else that was working light duty "At that time." (Deposition of Eryon Luke, P. 85).  The time frame in question was specifically referencing the time the plaintiff was placed on leave and not intended to encompass whether the plaintiff was aware that Nottingham accommodated others by providing light duty in general. A fuller excerpt of Ms. Luke's deposition is provided at page 85, lines 17-21. Notably, Luke testified that she expected to be placed on light duty "again," indicating that she had previously worked light duty.

**III. Luke's Prima Facie Case With Respect to Her Separation From Employment**

Next, the defendant argues that "Luke cannot establish a prima facie case with respect to her separation from employment," (CPlace MSJ page 6).  The defendant claims that Ms. Luke's lifting limitation rendered her unqualified for her position. The evidence shows, however, that defendant's employees did not need to be able to lift a certain weight in order to be qualified for their jobs.  The defendant fails to provide any evidence as to how often, if ever, during a given shift a CNA had to lift 30 pounds. Ms. Luke's direct supervisor, Michael Boligny, testified that all employees could have assistance as needed when lifting, (Boligny p. 12, 1-2; p. 13, 4-9; p. 16, 9-14). and the Employee Handbook directed employees to seek assistance when lifting. In addition, the use of a mechanical lift device would have allowed Ms. Luke to perform her job even with her lifting restriction. (Luke Dep. at 39). Moreover, the CNA job description did not contain any lifting requirement.  Thus, Ms. Luke was in fact qualified for the position she held as a CNA because she would have continued to address lifting in the same manner she would have prior to becoming pregnant: seeking assistance of others as needed.  There is further evidence that the plaintiff was qualified for a CNA position at Nottingham's sister facility which

transferred employees as regular business practice.   The deposition testimony of Yolanda

Selders, Human Resources Supervisor for Amber Terrace, sister company of Nottingham details

the 4 levels of CNAs they employed of which some positions did not even require lifting;

> Q: "Okay.  Are there many patients who don't require lifting?"
> A: "Absolutely, there is.  We have some walkie-talkies."
> Q: "Really? And do those patients still require the help in— of a CNA?"
> A:  "We have four different levels, so it all depends what level a resident is on whether or not they will require that assistance."
> (Deposition of Yolanda Selders pg. 30, 9-17)

Plaintiff has established she was qualified for her position and as to those activities that

do require some degree of lifting on the part of the CNA, a reasonable trier of fact could credit

the proffered testimony regarding the adaptive aids used at Nottingham and its sister facilities

including mechanical lifts and assistance from other employees and conclude that a CNA's daily

job tasks would not necessarily require her to lift more than thirty pounds regardless of her

patient's weight. Regional Director of Human Resources, Donna Duplantis, who along with

Human Resources supervisor, Rachael Carcamo, were directly involved in the decision to place

Ms. Luke on leave and ultimately terminate her employment confirms that not all patients

required lifting nor was lifting the only duty performed by CNAs.

> Q: "Just if you know, did every patient require lifting?"
> A: "I don't think so."
> Q: "And was that the only duty that was performed by CNAs, lifting of patients?"
> A: "No, sir."
> Q: "And, in fact, there are wide range of duties that CNAs do to assist patients, correct?"
> A: "Yes."
> (Deposition of Donna Duplantis pg. 46, 17-25, pg. 47, 1)

According to the testimony of her direct supervisor, Michael Boligny, Ms. Luke was

satisfactorily performing her job before becoming pregnant and could have continued to perform

her job satisfactorily with lifting assistance and mechanical lifts.[3]   Further, other employees who

were not pregnant, including Ms. Luke at an earlier time, were allowed lifting assistance and to

use mechanical lifts. The evidence is clear by both the deposition testimony of CNA Supervisor,

Michael Boligny, and Chief Operating Officer for Traditions Senior Management, R.B. Bridges,

as well as by the defendant's own written policy in the company handbook that lifting assistance

was not only permitted but it was even encouraged that employees use additional methods

including mechanical lifts and assistance from male employees.   Prior to plaintiff becoming

pregnant these mechanisms and alternatives to heavy lifting were in place and utilized by her.

> A: "If they don't have help, they can ask a team partner, another CNA or even myself."
> (Deposition of Michael Boligny pg. 12, 1-2).
>
> Q:  "What is the responsibility of the CNA specifically to a patient when it comes to movement and assisting them physically?"
> A.  "To go and assess them.  If they think they can't do it, they have to ask for help.  It's a team effort there." (Deposition of Michael Boligny pg. 13, 4-9).
>
> Q: "Isn't it in fact the policy of Nottingham that if necessary there should be teamwork in moving patients if it's deemed that it is too much for one person to handle?"
> A: "Oh, yes.  They are not going to pick up anybody by themselves."
> (Deposition of Michael Boligny pg. 16, 9-14).
>
> Q: "Refer to page 29 when it talks about general safety rules.  I want you to look at letter D on page 30. It says, "Lift with your legs, not your back and get assistance with heavy loads." Is it a policy or procedure— excuse me.  Is that a policy or procedure that when employees need assistance, they should obtain the help of other employees?"
> A: "That would be a good idea, yeah."
> Q: "Is that something that is suggested in this policy and procedure manual?"
> A: "It is not suggested, it is said to do."
> (Depositions of Roy Bridges Chief Operating Officer for Traditions Senior Management pg. 28, 21-25, pg. 29, 1-7)

The defendant's argument regarding Ms. Luke's qualification stems from the case of

*Appel vs. Inspier Pharm., Inc.*,  428 F. App. 279 (5th Cir. 2011), in which an employee was

found – without legal analysis of the second requirement of the McDonnell-Douglas framework -

---

[3] Boligny p. 24, 2-12.

- not to be qualified for her position because her high risk pregnancy prevented her from performing many of the duties of her position. The parties in *Appel* did not cite to the court any standards for analyzing whether an employee is qualified for purposes of making a showing pursuant to the second requirement.  Plaintiff avers that finding at the prima facie stage that she was not qualified because of a lifting restriction would deprive her of the chance to present evidence to show that the defendant's claim of lack of qualification is not accurate.

Courts in other circuits have held that a plaintiff's showing of "qualification" at the prima facie stage is minimal and have refused to consider the employer's justification for its adverse action as part of the prima facie case. See, e.g.,  *Kulik v. Medical Imaging Res., Inc.*, 325 F. App'x 413 (6th Cir. 2009) (a showing of satisfactory performance at the prima facie stage does not consider the nondiscriminatory reason proffered by the employer); *Tysinger vs. Zanesville Police Department*, 463 F.3d 569, 573 (6th Cir. 2006) (same); *EEOC vs. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184 (10th Cir. 2000) (same). A reasonable trier of fact could thus find that Luke established she was qualified for her position and that a causal link existed between her pregnancy and her termination because non-pregnant CNAs at Nottingham were afforded opportunities to seek assistance with their jobs, specifically including lifting tasks if necessary, while she was not.

**IV. Nottingham Cannot Offer a Legitimate Non-Discriminatory Reason For Its Actions and Plaintiff Has Offered Evidence of Pretext or Discriminatory Motive.**

The defendant argues that "Nottingham has legitimate non-discriminatory reasons for its actions and plaintiff offers no evidence of pretext or discriminatory motive." (CPlace MSJ page 9). The defendant appears to be claiming that Luke was denied a light duty position because, at that time, Nottingham did not have any light duty positions available nor did it offer light duty to its employees under any circumstances.  The plaintiff has addressed the availability of light duty

above. In addition, the testimony of plaintiff's direct supervisor, Boligny, not only states he had

orders to provide Luke with light duty but that there was ample light duty work available to her:

> Q: "But there was sufficient work for her to do?"
> A: "Oh, Yes."
> (Deposition of Michael Boligny pg. 26 14-16).

The evidence shows that after mere days of permitting Luke to perform light duty HR

Supervisor, Rachael Carcamo, unilaterally made the decision to terminate Luke's assignment,

despite there being ample work available:.

> Q: "Were you aware that her direct supervisor gave her work and he was able to find ample
> work for her to do on the days that she did perform light duty?"
> A: "No, I was not."
> Q: "Were you aware that Rachael Carcamo discontinued the light-duty work that she had
> performed for those one or two days?"
> A: "No, I was not."
> (Deposition of Donna Duplantis pg. 37, 14-22)
>
> Q: "No, let's just take the first question.  Should she have made that decision alone not to
> allow her to work light duty?"
> A: "No, sir."
> Q: "Okay.  And then the second questions is, should she make that determination alone as to
> whether she could perform light duty or not?"
> A: "No, sir."
> (Deposition of Donna Duplantis pg. 38, 16-23)

Defendant's proffered justification is therefore not correct.

The defendant misstates the *Young* ruling by the Supreme Court in stating that Luke has

no evidence that Nottingham accommodated a larger percentage of non-pregnant employees

while failing to accommodate a large percentage of pregnant employees (CPlace MSJ Page 9).

The *Young* court merely suggested that one of the ways the plaintiff could have proven her case

was by presenting evidence to the contrary not that such evidence was a requirement for the

plaintiff to prove her case.  The actuality is that if the defendant can prove a legitimate reason for

non-accommodation then the plaintiff in turn gets to show that the burden on them outweighs the

burden on the defendant of providing the accommodation.  Since the only reason the defendant

has for not providing the plaintiff with an accommodation is that they didn't offer light duty,

which reasoning has overwhelmingly been discredited, then under the *Young* analysis

Nottingham has not provided a legitimate reason for failing to accommodate Luke.

**V. Luke's Rights Were Violated Under the Louisiana Employment Discrimination Law**

The defendant's final argument is that "Nottingham was not required to create a position

or transfer Luke to another position that was held by a more senior employee" (CPlace MSJ page

10). The policy of The Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq., is to

ensure that female employees who are absent from work as a result of pregnancy, childbirth, or

related medical conditions are eligible for maternity leave and will be treated as any other

employee who is otherwise temporarily disabled. LSA-R.S. 23:342(b)4 it shall be illegal:

> For any employer to refuse to temporarily transfer a pregnant female employee to a
> less strenuous or hazardous position for the duration of her pregnancy if she so
> requests, with the advice of her physician, where such transfer can be reasonably
> accommodated, provided, however, that no employer shall be required by this Part to
> create additional employment which the employer would not otherwise have created,
> nor shall such employer be required to discharge any employee, transfer any
> employee with more seniority, or promote any employee who is not qualified to
> perform the job.

The Defendant violated LSA-R.S. 23:342(b)4 for failing to temporarily transfer Plaintiff

Luke to a less strenuous or hazardous position during her pregnancy as she requested.  The

defendant attempts to clear their culpability of not accommodating Luke by stating that she only

requested a specific position (CPlace MSJ p. 10) and thus since no such position existed they had

no further obligation.  This assumption that the plaintiff only wanted the position of a "ward

clerk" is not correct and likewise stating that she was not qualified for that position is in direct

contradiction to Carcamo's answer when asked what kind of jobs do CNAs do whereby she

responded "if they have another position open. Yes, they can go into another position.  They

could be a ward clerk." In fact Carcamo proceeds to state that CNAs can go into anything that doesn't require a medical license."[4] The sum of the facts are thus (1) Plaintiff requested accommodations, (2) plaintiff provided documentation from her treating physician and (3) such reasonable accommodations were available. Luke requested to be accommodated and the accommodation was available as is evidenced by the testimony of Michael Boligny who stated that their was ample light duty work available for Luke. The defendant states that "Luke is unable to identify any open position that was "less strenuous or hazardous,: nor any "less strenuous or hazardous position" that was held by someone with less seniority that her, Nottingham is entitled to judgment as a matter of law." (CPlace MSJ Page 11). Of note is that while the defendant states that Luke is unable to identify the above position, in reality the quote is actually referenced by footnote as being made by Human Resources Supervisor Rachael Carcamo (Carcamo, 21). Even should Luke not have been able to identify a position by name during the point would be moot as the facts presented are that sufficient light duty was available for the plaintiff therefore the defendant was required to provide Luke said accommodation.

Defendant states that Michael Boligny, allowed Luke to perform limited duties on December 3-4 **only** because at the time Luke reported to work, there was no Human Resources Manager on duty to advise Boligny otherwise (CPlace MSJ P. 12). The proffered statement was not made by Michael Boligny himself but per the footnote referenced (25) is again actually attributed to Rachael Carcamo (Carcamo 6). The testimony of Michael Boligny is that he and Rachael Carcamo discussed Luke performing light duty and that he did not make the decision for Luke to perform light duty, that decision was made by his supervisor.

> Q: Did you have any direct conversation with Rachel Carcamo— let's just say Rachel. I
> don't know the correct pronunciation — regarding Ms. Luke's pregnancy."

---

[4] Carcamo p. 50, 13-22

A: Yes.
Q: What was the nature of those conversations?
A: Work status — her work restriction status.
Q: What about the work restrictions?
A: How it came to me is coming to work at 2 o'clock in the day time.  The assignment is previously made before I get there and those notes ware made at the bottom of the assignment.  It tells you what status everybody is working, the area they are working, the responsibility of working.  At the bottom it is indicated of what this person is to be doing.  It is a little note a the bottom of the assignment.
I remember it saying that Eryon was going to have light duty.  I went to Rachel and asked her what does light duty entail and why.
Q: Let's stop.  You said there are notes.  Who prepared those notes?
A: The supervisor previous to me coming.
Q: Who would that have been?
A: I can't remember back then. Its been so many.
Q: So it would've been the supervisor on the shit prior to you who prepared the notes?
A: The assignment was made before I got there.
Q: And you said you went to Rachel on that day that you saw that?
A: Yes.
Q: What did you and Rachel Discuss?
A: That she as pregnant.  She was on my duty and what her restrictions would be for what she could do and what she couldn't do.
(Deposition of Michael Boligy, p. 22; 16-25, p. 23; 1-25; p. 24; 1-4).

The defendant's statement gives the appearance on paper that they went above and beyond their due diligence before making the determination that there was no reasonable accommodation available.  The defendant specifically points out that Donna Duplantis, the Regional Director of Human Resources for Traditions Senior Management, "testified that she spoke with Nottingham personnel, including the HR manager and Director of Nursing, evaluated Luke's restrictions and determined Luke could not perform the main duties of her job, i.e. lifting (CPlace MSJ page 12)."  The referenced Nottingham personnel, HR manager, is Rachael Carcamo and as evidenced by the following excerpts taken from Donna Duplantis's deposition, the fact is that Eryon Luke's accommodation was discontinued in direct violation of the LEDL.

Q: "Were you aware that her direct supervisor gave her work and he was able to find ample work for her to do on the days that she did perform light duty?"
A: "No, I was not."

Q: "Were you aware that Rachael Carcamo discontinued the light-duty work that she had performed for those one or two days?"
A: "No, I was not."
(Deposition of Donna Duplantis pg. 37, 14-22)

Q: "No, let's just take the first question.  Should she have made that decision alone not to allow her to work light duty?"
A: "No, sir."
Q: "Okay.  And then the second questions is, should she make that determination alone as to whether she could perform light duty or not?"
A: "No, sir."
(Deposition of Donna Duplantis pg. 38, 16-23)

The defendant states that the additional discovery conducted by Luke "simply confirms that Nottingham made every effort to determine if it could accommodate Luke's restriction, but there simply were no available positions to transfer Luke (CPlace MSJ page 12)."  The fact is that the additional discovery conducted by the plaintiff confirmed that there was ample light duty work available, that the on site Human Resources manager, Carcamo, was aware that the plaintiff was performing light duty, and that the defendant cannot give a legitimate reason why they ended Luke's accommodation and ultimately her employment.   The available accommodations would have allowed plaintiff to continue to work with her weight restriction, and did not require Defendant to create a new position, require additional employment nor did it require Plaintiff to be given seniority over another.  Accordingly, summary judgment should be denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Renewed Motion for Summary Judgment should be denied.

Respectfully submitted on this 3rd day of December 2015:


_____/s Elizabeth Leblanc s/____

Elizabeth Leblanc.,
Bar Roll # 32801
3834 New Prosperity Lane, Suite A
Addis, LA 70710
Telephone: (225) 749-8696
Facsimile: (225) 749-8396

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff's Memorandum in Opposition to Defendants

Renewed Motion for Summary Judgment, with attached Exhibits has been filed with the Clerk of

Court using CM/ECF system.  Notice of this filing will be sent to all counsel of record by

operation of the Court's electronic filing system to:

Christine S. Goldberg
The Kullman Firm
4605 Bluebonnet Blvd., Suite A
Baton Rouge, Louisiana 70809

_____s/ Elizabeth Leblanc s/_____
Elizabeth Leblanc